Bank of Chenango *vs.* Osgood and others.

A covenant *not to sue* one of four joint debtors is *not* a release of the others, where such a covenant is entered into by the consent of the others, and where they have agreed not to plead it in bar to an action against them on the original cause of action.

This was an action of assumpsit, tried at The Madison circuit in September, 1828, before the Hon. Nathan Williams, one of the circuit judges.

Osgood and three others were the endorsers of a bill of exchange, drawn by Gilbert F. Jones on a banking company in London, for £2000 sterling, dated in January, 1824, payable thirty days after sight, which was purchased by the plaintiffs and negotiated by them. It was returned *protested*, and the plaintiffs took it up in June, 1824, paying $11,680, including damages, &c. When notice of *non-acceptance* was received, the endorsers were called upon for payment, and on the 4th of May, 1824, made their note to the plaintiffs for $12,000, which was renewed on the 6th of August, 1824, payable in ninety days. In February, 1828, this suit was commenced, in which the plaintiffs claimed to recover the balance due on the above indebtedness, and obtained a verdict for $3147,92, subject to the opinion of this court upon the following facts:

NEW-YORK, May, 1830.

Bank of Chenango v. Osgood.

On the 4th May, 1824, when the first note for $11,000 was made, two instruments in writing were executed between the parties; the first by the plaintiffs, by which after, reciting the making, endorsing and protest of the bill of exchange, the making of the note of $11,000, and the giving of a bond and warrant of attorney to the bank, as collateral security by Jones the drawer of the bill, arthorizing the confession of a judgment for $11,000, it was agreed, on the part of the bank, that the defendant should have the control of the judgment against Jones for nine months, after which time the bank reserved the right to collect upon the judgment whatever remained unpaid of what they should be legally liable to pay upon the bill of exchange for principal, interest damages and costs. They further agreed that the note of the defendants should be continued for nine months, if they desired it, and that if the bank should not be obliged to pay the whole sum of $11,000 on account of the bill of exchange, that no more should be collected of defendants than the bank should pay. By the instrument executed by the defendants, it was agreed that if $11,000 should not be sufficient to indemnify the Bank on account of the bill, *the deficiency*, whatever it it might be, should be paid and made up by the defendants. In January, 1835, an execution was issued on the judgment against Jones, and $7,250 made by virtue thereof, and subsequently about $1,000 more were made out of his property. After this sum had been raised out of the property of Jones, the defendants on the 14th February, 1826, entered into another instrument in writing, under their hands and seals, whereby, after reciting that they were jointly holden to the bank in an unpaid balance of about $4000 upon the bill of exchange aforesaid, and that the bank had proposed to *discharge* or covenant *not to sue* any one or more of them who should pay his equal one fourth part of the said debt, or such part or portion thereof as they might agree to receive of them respectively for such share or portion, the defendants, for the purpose of enabling themselves separately to settle with the bank, without impairing the liability of those who did not settle to pay the balance that might remain due after such settlement, *agreed*, as well with

one another as with the bank, that the bank might recive of any one or more of them such sum as they might think fit to receive, and to discharge or covenant not to sue such person or persons; and that such discharge or covenant should not be deemed or taken to be a release of the others for any sum beyond the one fourth part of the amount due to the bank, but should only be deemed payment of such part; and that they would not plead such release or covenant in bar to any action to be brought against them by the bank, but merely insist on the same as payment of the equal portion of the party settling; and that they would not enforce contribution against the party settling. On the same day that this instrument was executed, the bank, for the consideration of $750, to them paid by *Daniel Hatch,* one of the defendants, covenanted and agreed *not to sue* or prosecute him upon the said bill of exchange, or upon any other note or liability growing out of the same, or to issue any execution or process of any description whatever against him subjecting him to arrest, and that such demand should never be claimed of him.

The defendants insisted, 1. That under the agreements of the 4th May, 1824, the plaintiffs were bound to shew the *amount* of the money they bad been obliged to pay by means of the protest of the bill of exchange, before they could be entitled to recover upon the note of $11,000 ; but his honor, the judge, decided that the note was *prima facie* evidence of the amount paid, and that if the defendants contended that that the amount was less, the *onus probandi* laid on them. After this decision was made, a witness, called by the defendants themselves, proved that the amount paid by the bank exceeded $11,000. 2. The defendants insisted that the covenant *not to sue* Hatch released *all* the defendants. This objection was also overuled.

In the amount claimed by the plaintiffs was an item of £228 sterling for the rate of exchange upon the bill returned protested. This was objected to by the defendants, but allowed by the judge. The defendants also claimed a credit of $600 received by the plaintiffs of *Jones ;* but it did not appear that any direction had been given by Jones as to the

NEW-YORK, May, 1830. Bank of Chenango v. Osgood.

appropriation of the money, and it did appear that the plaintiffs credited it on account of claims they had against him other than that arising upon the bill of exchange. The defendants also offered to prove that, by virtue of the execution issued on the judgment against Jones, property to an amount sufficient to satisfy the whole of the judgment was levied upon by the sheriff of Madison, but that the same was stolen from the possession of the sheriff. The evidence was excluded by the judge, on the ground that the judgment being collateral to the note, a levy without actual satisfaction was no defence to the note.

The first count in the declaration described the note of the 4th May, 1824, for $11,000, as made by the four defendants *jointly*, in compliance with the act of incorporation of the plaintiffs, declaring all the parties to a note, whether makers, endorsers or guarantees, to be *joint makers* or drawers, and requiring them to be sued and declared against as such. The note produced was *drawn* by Daniel Hatch, one of the defendants, and payable to the other defendants, and *endorsed* by them. The defendants objected to the note being read in evidence, on the ground of variance from that described in the declaration, but the objection was overruled. The suit was commenced against all the defendants. Hatch, however, was returned not found.

*By the Court*, MARCY, J. The first point raised by the defendants was waived, or at least not much urged on the argument. The mode of declaring against both drawers and endorsers of a note as *joint makers*, is not only authorized but enjoined by the sixteenth section of the act incorporating the plaintintiffs; a valid exception cannot therefore be taken to it. The principal difficulty in this case relates to the the construction to be given to the covenant entered into by the plaintiffs *not to sue Hatch.* The occasion and object of this covenant must be considered before we pronounce upon its legal effect. The defendants, as appears by the recital in the covenant, were indebted to the plaintiffs in a balance of about $4000 on a bill of exchange, Hatch having paid about $750, the plaintiffs gave him a covenant not to

sue or prosecute him on that bill, or on any note or liability growing out of that transaction. Cotemporaneously with the execution of this covenant by the plaintiffs, the defendants entered into a covenant that if the plaintiffs did receive of any one of the defendants the equal fourth part of the balance which was due, and the plaintiffs should discharge such defendant or covenant not to sue him, such discharge or covenant should not be taken to be a release of the other defendants, beyond the amount actually paid; and they further covenanted not to plead the discharge or covenant which might be given by the plaintiffs to any defendant, on receiving from him his proportionate share of the balance due on the bill of exchange. To give, as we are now asked to do, such construction to the covenant not to sue Hatch as will release the defendants from all liability for the $4000 balance, and every part of it would be defeating the express intention of the parties, and at the same time bar the recovery of a demand justly due to the plaintiffs. Such a result could not have been contemplated by them.

A covenant *not to sue* operates as a release upon the principle of preventing circuity of action. The plaintiff who, in violation of such covenant, should sue and recover, were it not construed as a release, would be immediately answerable, on his covenant to the person from whom he recovered, for the full amount of his recovery. Such would not be the case here. The plaintiffs are not responsible, on their covenant with Hatch, to *all* the defendants who now wish to avail themselves of a pretended breach of it. We are not, in this case, called on to give it the operation of a release, because the principle of preventing circuity of action does not apply. It has been decided that where the obligee covenanted not to sue one of two *joint* and *several* obligors, and if he did, the covenant should be a release of the demand as against the obligor with whom the covenant was made, the obligee may still sue the other obligor. (8 T. R. 168.) In giving the opinion in the case of *Lacy* v. *Kynaston*, (2 Salk. 575,) the court say, "If A. and B. are jointly and severally bound to H., and H. covenants with A. that he will not sue him, this is not a defeasance; for still there is a remedy

NEW-YORK, May, 1830.

Bank of Chenango v. Osgood.

on the bond against B.;" otherwise, if A. only had been bound, for then such covenant excludes him from any remedy forever, *to avoid circuity of action.* The remark made by this court in *Jackson* v. *Stackhouse,* (1 Cowen, 122,) that a covenant not to sue operates as a release, contemplates the covenant to be made by the party having the right to sue, with *all* the parties liable to be prosecuted. This observation, though not literally, is substantially applicable to the case of *Phelps* v. *Johnson,* (8 Johns. R. 54.) It is true that the covenant in that case was not with both the persons liable to be sued, yet it was made for the benefit of the one not named in it, and the court considered it available to him, because he might sue on it, using the name of the defendant with whom it was made. He was in effect the party, because he was the *cestui que trust;* and his equitable interest the court felt themselves bound to protect.

Have the defendants, in the case now before the court, any equities growing out of the covenant with Hatch which this court ought to protect? None at all. If, upon strict principles of law, they could prevail in this defence, equity would consider it unconscionable and dishonest, and on that ground would give the plaintiffs relief. (8 T. R. 171.) I am clearly of opinion that the covenant not to sue Hatch, without being taken in connection with the covenant of the defendants, explaining that covenant and agreeing not to avail themselves of it, cannot be construed as a release of all the defendants; and if we view it in that connection, it does not appear to me that the greatest ingenuity can raise a doubt upon the point,

The note for $11,000 was given to the plaintiffs to secure them for their liability on the bill of exchange, which the defendants had negotiated to, and procured to be discounted by, the plaintiffs. The judge at the circuit decided, that from the agreement which the parties had entered into on this subject, it was to be assumed that the liability of the plaintiffs actually amounted to the sum for which the note was given. The defendants objected to this decision, contending that it was incumbent on the plaintiffs to shew the extent of their liability. Whether this decision was correct or not, it is not

material now to consider; for the defendants themselves subsequently introduced a witness who proved that the plaintiffs became responsible on that bill by reason of its being protested to an amount of more than $11,000.

It is stated in the case that the judgment against Jones by confession was taken as collateral security. The levy on property, by virtue of an execution issued thereon, cannot be considered a bar, unless followed by an actual satisfaction of the original demand. (8 Cowen, 192.) It is admit‧ted that the property which the defendants offered to shew had not been sold, but had been purloined from the sheriff. I think the judge properly rejected the evidence; for if it had been received, it could not have affected the plaintiff's right to a recovery, or reduced the amount thereof.

The allowance for the rate of exchange, and the disallowance of the $600 sent to the plaintiffs by Jones, were, in my opinion, both correct. For the first, the case of *Denston* v. *Henderson & Cairns*, (13 Johns. R. 322,) is an explicit authority. In relation to the disallowance of the $600, it is to be observed that Jones, who made the payment, did not direct the application. This left the plaintiffs at liberty to appropriate the money to any claims which they had against Jones; and they accordingly did appropriate it to claims other than those for the payment of which the defendants were bo  d.

<div align="right">Judgment for the plaintiffs.</div>