Beers *vs.* The Phœnix Glass Company and others.

When the directions given by the managers of a company to one of its officers are merely verbal, it is difficult for those who have dealings with the company to prove them, by any direct evidence. In such cases, where the acts of the officer are performed at the office of the company, are of a public character, and are numerous and long continued, it is reasonable to presume that they are in conformity with the instructions of the managers.

If the directors of a company, either through inattention or otherwise, suffer its subordinate officers to pursue a particular line of conduct for a considerable period, without objection, they are as much bound to those who deal with the officers in ignorance of their want of authority, as if the requisite power had been directly conferred.

The power of an incorporated company to borrow money, when it has not been directly conferred by its charter, extends to all cases where it is essential to the transaction of its ordinary affairs, *it seems.*

It is then incidental, and is in effect included in the grant of the principal power. But the power to borrow money should be limited to and for the appropriate business of the corporation.

Where the secretary of an incorporated company confines himself to the business of the company, and there is no evidence that he extended it beyond its legitimate sphere, it is right to infer that money borrowed by him in the name of the company, under authority given by the directors was, destined for the appropriate use of the company.

If the money was in fact obtained for an illegal purpose, or was misapplied, the *onus* of proving it should devolve upon the corporation.

This action was commenced in the month of June, 1851, in the city court of Brooklyn, by the plaintiff, Edwin Beers, for the recovery of seven hundred and sixty-five dollars, alledged to have been lent and advanced by him on or about the 10th and 13th days of December, 1850, to the defendants, The Phœnix Glass Company, and the further sum of fifty-eight dollars for the discount of uncurrent money alledged to have been discounted for them by him as a broker, between the 1st day of October and the 11th day of December, in the same year. The defendants, The Phœnix Glass Company, were a corporation created under the general act of the legislature of this state, entitled " An act to authorize the formation of corporations for manufacturing, mining, mechanical or chemical purposes," passed February 17, 1848; and the other defendants were, at the time the debts were alledged to have been contracted, stockholders and trustees

of the said company, and it was claimed that they had become liable for the payment of the said indebtedness, on the ground that the company, although more than two years had elapsed since their certificate of incorporation was filed, had not, annually, within twenty days from the first day of January, made, published and filed in the office of the clerk of the county where their business was carried on, the report required, in and by the 12th section of the said act.

All the defendants (except Robert B. Clark, who did not answer,) put the alledged loan and discount both at issue. The defendants, Engle and Jones, set up in their answer that the company ceased to transact business prior to first October, 1850, which allegation was put in issue by the reply; and the defendant Engle also alledged that the company, prior to their ceasing to do business, did annually, and within twenty days from the first of January, make, publish and file the report required by the 12th section of the said act.

The issues were tried in September, 1851, when the following facts were established: that the said company were incorporated in December, 1848, for 25 years, under the above mentioned act, with a capital of $7,500, for " the manufacturing of glass in all its varieties, and in the purchase and sale thereof, and in purchasing all the materials, tools and instruments necessary for the manufacturing of glass, and generally to do all business connected with the manufacturing of glass, and the sale and disposition thereof; and to rent, hire, lease or purchase such real estate as might be necessary to carry on said business." That Robert B. Clark was secretary of the company, with powers and duties specifically defined by section 2 of the by-laws, one of which was "to act as treasurer of the company, and to do all such other acts as might be required of him by the board of trustees." That the secretary had no power, under the by-laws, to borrow money nor sign notes, or any evidence of indebtedness on the part of the company. On the contrary, the power to sign notes and obligations of the company was confided to the president; and the secretary and president, together, had the management of the financial department. The plaintiff proved

the lending of the money to Clark, while he was acting as the secretary of the company, and occupying its office; and the discounting of uncurrent money, at his request, by the plaintiff. The plaintiff recovered a verdict against the defendants for $842,92; and the defendants appealed from the judgment entered thereon. The facts appearing on the trial, which have not been mentioned above, are set forth in the opinion of the court.

*H. B. Duryea*, for the plaintiff.

*J. A. Lott*, for the defendants.

*By the Court*, S..B. STRONG, J. The introduction of testimony to prove that Clark acted as secretary of the company, before showing that he held that office, was premature; but as his official character was afterwards clearly proved, the objection was cured. As the objection could have been so easily obviated, it was singular that it was not done at first, and almost as singular that it was raised at all. The second section of the by-laws of the company authorized the secretary to act as its treasurer, and to do all such other acts as might be required of him by the board of trustees. It no where appears in what manner the requirements of the trustees upon their secretary should be made; whether they should be written, or merely verbal; and in the absence of any evidence as to that, it is reasonable to presume that they might be either. When the directions from the managers of a company to one of its officers are merely verbal, it is difficult for them who have dealings with it to prove them by any direct evidence. In such cases, where the acts of the officer are performed at the office of the company, are of a public character, and are numerous and long continued, it is reasonable to presume that they are in conformity with the instructions of the managers. If the managers faithfully perform their duty, they exercise a constant and vigilant supervision over the acts of their officers, and where such acts are unauthorized or in opposition to their will, they should, and probably do, direct their discontinuance, and in case of willful or palpable violation of duty, dismiss

Beers *v.* Phœnix Glass Company.

the agent. If they do not, and suffer their subordinate to remain in office and to continue the same line of conduct, the public has a right to suppose that such subordinates act in accordance with the wishes of their superiors, and pursuant to authority regularly conferred upon them.

In this case Clark was one of the directors of the company, and its secretary. There is no evidence that he transacted any other business than that of the company. He occupied its office, or the principal place for transacting its affairs. The business which gave rise to this suit was conducted there; the checks were signed by him as secretary. They were drawn upon banks in which he had long kept the accounts of the company to a large extent. His dealings with one of the banks had been expressly authorized by the directors, and there is reason to suppose that they had sanctioned his dealings with the other, from their extent and publicity, and from the facts that he was one of the directors, his father-in-law another, and another had presented a check drawn by him as secretary, on such bank, and received the money, and the three constituted a majority of the board. The checks were drawn pursuant to a practice which he had pursued with the plaintiff for a long period, and to a considerable extent, and the facts proved warrant the inference that the plaintiff at the same times gave his checks, which were for the same amounts, to enable the secretary of the company to apply the moneys to its use as he had repeatedly done under similar circumstances. I have stated that the facts proved warranted the inference that these transactions were directly authorized. But that was not necessary in order to bind the company. If the directors of a company, no matter whether through inattention or otherwise, suffer its subordinate officers to pursue a particular line of conduct for a considerable period, without objection, they are as much bound to those who are not aware of any want of authority, as if the requisite power had been directly conferred.

The evidence as to the checks was, I think, admissible. They had been returned to the proper officer of the company, or to his brother, who, it may be fairly presumed, acted as his agent in

receiving them. Such papers are not generally retained, but if they have been, in this instance, the presumption is that they were in the possession of the company, which was duly notified to produce them. Besides, they were introduced mainly to show the manner in which the secretary dealt with the banks, and the extent of those dealings, and in such cases the rule for the admission of secondary evidence literally applied.

There was undoubtedly sufficient proof that the plaintiff had discounted uncurrent moneys for Clark, while acting as secretary for the company, and there is nothing to show that the jury went beyond the proof in what they awarded on that account.

The checks were not the only evidence as to the claim for money lent. It was proved that the plaintiff at the same time gave his own checks for the same amounts, which were paid; and it was also shown that he and Clark were in the habit of exchanging checks in the morning to enable Clark to draw the money early in the day, on the plaintiff's checks, to pay promptly the daily expenditures of the company, and that Clark's checks were paid later in the day. This evidence was sufficient to warrant the conclusion that the money was lent by the plaintiff to the company.

It has sometimes been doubted whether an incorporated company has the power to borrow money, when it has not been directly conferred by its charter. That point was much discussed in the case of *Leavitt* v. *Palmer*, before the court of appeals. The distinguished counsel of the plaintiff in that case, (Mr. S. Beardsley,) who argued against the general power, admitted, in answer to a question asked by me, that they might possess it, in cases of emergency, such as to meet a run on a bank. But it appeared to me then, and I still think, that the power is more extensive. It is difficult to fix any limit, but I should suppose that it extended to all cases where it was essential to the transaction of its ordinary affairs. It is then incidental, and is in effect included in the grant of the principal power. The defendants had to purchase the raw materials for the factory, and they had also to employ workmen. Occasionally they might want

money to pay for such materials, or to compensate their labor-ers. I can see no reason why they should not effect a loan for either purpose. Nor indeed can there be any reasonable objection to their hiring money, when it is essential to conduct any of their legitimate operations. It would be difficult, if not impossible, to specify every act which might be necessary or useful to effectuate the objects for which the corporation is created. The general principle that corporations must confine their operations to their legitimate business, is sufficiently definite. It is not necessary, nor would it be useful, to restrict them in the manner of conducting such business. They should be confined, however, to the customary adjuncts, and not be at liberty to exercise one power under the pretense of carrying out another. Their power to loan money should be limited to and for the appropriate business of the corporation. In other words, they possess it as an incidental, and not as a principal, power.

It does not very distinctly appear for what purpose the secretary loaned the money from the plaintiff. As that officer confined himself to the business of the company, and there is no evidence that he extended it beyond its legitimate sphere, it is right to infer that the money was destined for the appropriate use of the company. As the secretary could borrow money for a lawful purpose, and was entrusted by the directors to perform that service, if the money was in fact obtained for an illegal purpose, or was misapplied, it is manifestly right that the onus of proving it should devolve upon them. There was no such proof, on the trial, and the jury were warranted in their conclusion that the money was loaned for the lawful business of the company.

It is a sufficient answer to the objection that the defendants, other than the corporation, were absolved from any liability to pay the amount of the check on the Atlantic Bank by reason of the delay in presenting it; that there is no evidence that such delay was at all prejudicial to them. It is no defense to the drawer of a check that, in consequence of the delay of the holder in presenting it, the money in the bank was appropriated in payment of another check of the same drawer. And if it was still

a debt against the corporation, the other defendants were liable in their individual capacity.

There was a suspension of the business of the company for three months, but they had resumed operations before the transactions involved in this suit had taken place. If the business, after the suspension, was in any manner different from what it had been before, it was still of the same nature, conducted in the same place, and managed by the same agent, and no notice of any change had been given to the plaintiff, who had been a previous dealer with the company. Besides, the time for which the corporation was to continue, specified in their certificate, had not expired. Clearly neither the company nor the other defendants were exonerated from liability, under such circumstances.

Upon the whole I think that this case was correctly decided in the court below, and the judgment must be affirmed.

[DUTCHESS GENERAL TERM, October 4, 1852. *Morse, Barculo* and *S. B. Strong,* Justices.]