## MEAD *vs.* KEELER.

Where a promissory note, purporting to be the note of a manufacturing corporation incorporated under the act of March, 1811, was signed by a clerk, in the name of the general agent of the corporation, as agent, by his direction, and it was shown that the note was in the form which had been customarily used and approved by the company in other similar cases, and which had always been recognized by them, and the money for which it was given was used by the company in its business; *Held*, that this was sufficient proof of the execution of the note by the company to go to the jury; and to warrant the jury in finding that the company had adopted, by usage, the signature of their agent as their own, and intended to be bound by it.

A company incorporated under the act of 1811, has power to borrow money to be used in its legitimate business, and to bind itself in its corporate capacity, by a written obligation for its payment.

After a manufacturing corporation has been recognized by the court as a duly constituted corporation, under the act, and has claimed to be and has acted as such for over twenty years, and an individual has recognized its corporate existence by becoming the owner of a portion of its stock and continuing to hold it until the dissolution of the company, he will not be permitted, when sought to be made liable for a debt of the company, to allege that the corporation has never been legally incorporated.

MOTION by the plaintiff to set aside a nonsuit, and for a new trial; ordered to be heard at the general term in the first instance. The action was tried at the Cayuga circuit in

Mead *v.* Keeler.

October, 1855, before Justice Strong and a jury. In March, 1831, a company was organized under the act of the legislature, passed March 22, 1811, entitled " An act relative to incorporations for manufacturing purposes," (1 *R. S. 4th ed.*, 1210,) by the name of the " Moravia Cotton Mill." The certificate of incorporation declared the object of the company to be " for the purpose of establishing a cotton manufactory in the village of Moravia, town of Sempronius, county of Cayuga." The company went into business after its incorporation, and continued to do business until shortly before the 10th day of January, 1851, when proceedings were instituted in the supreme court with a view to dissolving the corporation, which resulted on the 6th day of May, 1851, in a regular judgment dissolving the corporation. The action was brought to recover of the defendant the amount of a debt alleged to be due from said company, on the ground that he was one of its stockholders at the time of its dissolution. The other facts appear in the opinion of the court. The plaintiff was nonsuited, upon the trial.

*D. Wright*, for the plaintiff.

*Geo. Rathbun*, for the defendant.

*By the Court*, Welles, J. It appeared upon the trial that on the 21st day of January, 1850, one Gideon Briggs lent the company $155, for which a note was given in the following words and figures :

" $155.00. For value received, the Moravia Cotton Mill promise to pay Gideon Briggs or bearer, one hundred and fifty-five dollars, with interest. A. Cady, Agent.

Moravia, Jan. 21, 1850. *per* G. C. Dibble."

Dibble testified that the Moravia Cotton Mills organized and did business under the certificate of incorporation, which had been read in evidence. That he was in their employ for ten years, up to the fall of 1850, as clerk. That Artemas Cady was the agent of the company in January, 1850, and he, the witness, was clerk. That the signature of the note was in the witness' handwriting. That the note was given for borrowed

money. That he was in the habit of executing notes in this manner for the company, and with their knowledge. That he did it by direction of their agent. That the money borrowed of Briggs, for which the note was given, was used by the company in their business. It appeared that the defendant was a stockholder in the company from a time previous to the date of the note until the judgment of the court dissolving the corporation, to the amount of ten shares, or $1000. At another stage of the trial, the witness Dibble was recalled, and testified that he frequently gave the company's notes for borrowed money and for work, in the same manner as the one on which this action is brought, and that they were paid from time to time by the company. That he had frequent conversations with the trustees about borrowing money for the company. After the plaintiff rested, the defendant's counsel moved the court to nonsuit the plaintiff, on the following grounds: 1. That the note was not executed in a form to be binding upon the company or the stockholders. 2. That the corporation had no right to borrow money. 3. That the "Moravia Cotton Mills" never had been legally incorporated; that the certificate by which they claimed to be incorporated was defective, in not stating the number of trustees, and their names, who were to manage the concerns of the company the first year. The justice decided that the Moravia Cotton Mill had no authority to borrow money, and that the note upon which the action was brought having been given for borrowed money, was void; and thereupon the said justice nonsuited the plaintiff.

I shall consider the questions raised at the circuit on the motion for a nonsuit, in the order in which they were presented.

1st. As to the form of the note. Evidence was given, tending to show that it was in the form which had been customarily used and approved by the company in other similar cases, and which had always been recognized by them, and the money for which it was given was used by the company in its regular legitimate business. Again: Cady was the agent, *prima facie*, the general agent of the corporation, with power to bind his principals, in legitimate contracts. Dibble signed the name of

Mead *v.* Keeler.

Cady, as agent, by direction of the latter. This, in my judgment, was sufficient to send the question of the execution of the note, by the company, to the jury. The jury would have been warranted, upon the evidence, in finding that the company had adopted, by usage, the signature of their agent as their own, and by which they intended to bind themselves. The form of the body of the note is a promise by the company.

2. As to whether the "Moravia Cotton Mills" were competent to bind themselves upon a contract for borrowed money, to be used in their business. That they were capable of incurring pecuniary liability, is apparent from the seventh section of the act under which they were incorporated, (1 *R. S. 4th ed.* 1211,) which makes the stockholders personally liable, to the extent of the amount of their stock, for all debts due by the company at the time of its dissolution. How the debts must originate or be contracted, for which the stockholders are thus made liable, is not stated in the act. Manifestly, all debts which the corporations, contemplated in the act, were competent in law to contract, are intended. The power to borrow money is not expressly given, either in the act above mentioned, or in the title of the revised statutes defining the general powers of corporations. (1 *R. S. 1st ed.* 599, 600 ; *4th ed.* 1172.)

The second section of the first mentioned act declares that corporations formed under it, " shall in law be capable of buying, purchasing, holding and conveying any lands, tenements, hereditaments, goods, wares and merchandise whatever, necessary to enable the said company to carry on their manufacturing operations mentioned in such certificate." It will not be denied, that under this provision, the company had power to do and perform all incidental acts and things necessary to carry out and effectuate the express powers granted. Among the express powers, are those of buying and purchasing personal property necessary to carry on their operations ; and among their implied powers, it cannot be doubted, was that of hiring workmen. It will probably not be denied that they had the power to execute their promissory notes upon the purchase of such personal property, or in liquidating the claims of their

employees, in their legitimate business and transactions. Indeed, this seems to be conceded on the part of the defendant. And I think it equally clear that they possessed the power to borrow money for the same purposes, and to bind themselves in their corporate capacity, by a written obligation for its payment. To concede to them such powers would violate no law or positive principle of public policy. It would be doing no more than nearly every large business establishment finds it necessary occasionally to resort to. It is to be presumed that a corporation will conduct their operations in detail substantially upon the same principles and in the same manner as individuals engaged in the like business. And when they do so, and confine themselves to the purposes and objects of their incorporation, they should not be deemed as transcending their authority, but should be regarded as acting within the scope of those implied, incidental powers necessary to the full and advantageous development of those which are expressly given. In this case, the evidence shows that the borrowed money for which the note in question was given, was used by the company in their business. We are not, in the absence of evidence, to intend that such business was unlawful. (*Wood* v. *The Auburn and Roch. R. R. Co.* 4 *Seld.* 160. *Bank of Poughkeepsie* v. *Ibbotson,* 24 *Wend.* 473. *Beers* v. *The Phœnix Glass Company,* 14 *Barb.* 358. 2 *Kent's Com.* 299, 3d ed. *The People* v. *The Utica Ins. Co.* 15 *John.* 358, 383.)

If these views are correct, the nonsuit, which was granted solely upon the ground just considered, was erroneous; unless the remaining ground taken by the defendant's counsel at the trial should prevail. That was,

3d. That the "Moravia Cotton Mills" had never been legally incorporated. The first section of the act of 1811, before cited, provides that the certificate of incorporation shall contain, among other things, "the number of trustees, and their names, who shall manage the concerns of the company for the first year." The certificate in this case omits such statement, which is the ground of the objection now being considered. This company went into operation in 1831, as a corporation under the act of

1811, and continued so in operation for about twenty years, when it was dissolved by the judgment of this court. The evidence shows that they acted by trustees, and I think their corporate character may be legally upheld, by treating the provisions of the act, which is the foundation of the objection, not as fundamantal, but as directory. The company has been recognized as a duly constituted corporation under the act by this court, has claimed to be and acted as such, and the defendant has recognized its corporate existence by becoming the owner of a portion of its stock, and continuing to hold it until the company was dissolved. After all this, it will not be permitted the defendant to maintain that the corporation had no legal existence. The case of *Rosevelt* v. *Brown*, (1 *Kern.* 148,) was an action to recover a debt against this same company on the ground that the defendant was a stockholder. The point does not appear to have been taken in that case; and yet it is singular that it was not, if there was any foundation for it.

The nonsuit should be set aside and a new trial granted, with costs to abide the event.

Ordered accordingly.

[MONROE GGNERAL TERM, March 2, 1857. *T. R. Strong, Welles* and *Smith*, Justices.]