Selden, J.
The grounds on which the demurrer-was sustained in the Supreme Court are stated in the opinion as ■ follows : “ The trust instrument expressly specifying the terms on which the note came into the plaintiffs’ hands, as trustees, expressly giving them the right to sell, &c., but not to sue, the plaintiffs had no right to bring this action, as such trustees. There is no room for presumptions arising from their being the holders of the note, for they themselves set out the manner in which they hold it, and their rights over it. They had a right to sell it, without advertising, or otherwise giving notice; but with the express agreement before us, there is no place for- *405 presumption that they had a right to sue it as the owners and holders.”
I cannot assent to this position. The note constituted a perfect obligation against the defendant. He was bound to pay it to the person having the legal title to it. He was not inteiested in the trust, and the creation of it had no effect whatever upon his rights or duties. By the indorsement and transfer of the note to the plaintiffs, they obtained the legal title to it, and the right—the sole right—to demand and receive payment of it. The right of action to recover money attends upon the right to demand and receive it, and, I think, cannot be severed from it. (Flagg v. Munger, 5 Seld., 492.) If the plantiffs could not maintain an action on- the note, then no one could maintain it, for they alone had the legal title; and it would present a strange anomaly in the law if a note, absolutely due to a living person, could be so placed that no person could maintain an action upon it. If such cases can exist, this is not one of them. The power of sale given to the plaintiffs by the trust contract was designed to give them an authority which, by the mere transfer of the notes to them as collateral security, they would not have had. I think it was not designed to take away any power which the transfer of the legal title to the notes gave them. But if such was the design, even if the instrument of trust had contained an express agreement on the part of the plaintiffs not to sue the notes, it would not have aided the defendant in this action. Having the legal title to. the note, they had a perfect right of action against the defendant, and he could not avail himself of their covenant with strangers not to prosecute such action. (Bank of Chenango v. Osgood, 4 Wend., 607-612.) Such an action might be a breach of trust, but that would not aid the defendant—the trust in no way affecting either his rights or his duties. The error in the judgment in this case has arisen from a failure to distinguish between the legal and equitable interests in the note, which have no connection with each other. The legal interest depends upon the indorsement and transfer of the note by the insurance company to the plaintiffs; and in that alone has the defend *406 ant anyvinterest. That transfer being perfect, the plaintiffs’ right of action was perfect. The trust did not in any way affect it.
I have, thus far, assumed that the transfer of the note was valid. Its validity, however, is denied, first, on the ground that the insurance company had no power to .create such a trust ■ and, second, that, if it had such power, the transfer was" void for want of a previous resolution of the board of trustees" authorizing it.
It has often been decided that insurance companies, without’ any special authority for that purpose, possess the incidental power to borrow money; and such power, from the nature of their business, would seem to be indispensable to enable them to meet the sudden emergencies to which they are liable. (Furniss v. Gilchrist, 1 Sandf., 53; Curtis v. Leavitt, 15 N. Y., 9-219; Mead v. Keeler, 24 Barb., 20.) The power to borrow might include the power to obtain indorsers or sureties, and to secure them by a transfer of assets for that purpose; and it cannot be material whether such transfer should be directly to the indorser or " to a trustee for his benefit. In either case, the assets would, be equally held in trust. The power to create such a trust, by a corporation not specially authorized, was settled in the case of Curtis v. Leavitt (supra).
There are several conclusive answers to the objection that a resolution of the board of trustees was required to make the transfer of the note valid:
1. The statute only applies to transfers of corporate effects “ exceeding the value of one thousand dollars.” (1 R. S., p. 591, § 8.) The note transferred was $681 only, and all which appears, beyond that is, that certain other notes were transferred—the amount not being shown. We cannot assume from this statement that the amount transferred exceeded one thousand dollars. We could hardly indulge such a presumption, if it yrere necessary to make the transaction legal: much less can we do so, when the effect would be to make it illegal. Nq inferences, riot absolutely required by the facts alleged, can be allowed which will produce that result.
*407 2. If the notes transferred exceeded in value a thousand dollars, the court would not presume that the transfer had been made in violation of the statute. That is a fact, if it exists, to be shown in defence.
“ Acts done by a corporation, which presuppose the existence of other acts to make them legally operative, are presumptive proofs of the latter.” (Per Story, J., in Bank of the United States v. Dandridge, 12 Wheat., 79.) “Illegality is never presumed: on the contrary, everything must be presumed to have been legally done, until the contrary is proved.” (Bennett v. Clough, 1 B. & A., 461.)
3. I am inclined to regard the averments of the complaint, sufficient, if it were necessary for the plaintiffs to show affirmatively a compliance with the statute in question. (2 Kern., 436, 437; 22 How., 236.) The case differs very much from that in 9 Abbott (p. 198). It is not, however, necessary to decide this question; nor whether the want of a compliance with the statute is a defect of which the debtor could take advantage. (6 Seld., 60; 33 Barb., 340.) I doubt the soundness of the opinions expressed in these cases, that none but the corporation, or its creditors or stockholders, could impeach such a transaction, for the want of the previous action of the board of directors. The transfer in such case would be, not only unauthorized, but illegal (3 Kern., 119), and, I think, void, even as to strangers,. However that may be, the plaintiffs here would be protected by the saving clause of the statute in favor of bona fde purchasers, if it were necessary for him to invoke that protection in his behalf. (1 R. S., p. 591, §8; 15 N. Y, 11.)
' The judgment of the general term should be reversed, and the order of the special term affirmed, with costs.
Balcom, J.
The Atlas Mutual Insurance Company was authorized “ to negotiate its promissory notes for the purpose of paying claims or otherwise, in the course of its business.” (Laws of 1842, p. 263, § 12; Laws of 1843, p. 69, § 8.) It therefore had the right to transfer the defendant’s note to the *408 plaintiffs, as collateral security for those loaned to it, and placed in the hands of the plaintiffs for its benefit.
The statements that the company deposited, with, and transferred the defendant’s note to, the plaintiffs as its trustees and the trustees of the sixteen pérsOús and firms named, who had loaned it their notes, 'and that the defendant’s said note "was “ duly indorsed in blank by said Insurance Company, by an officer thereof duly authorized,” at or before the time of such deposit, are sufficient upon demurrer io show that the plaifitiffs as trustees had title to such note, without reference to the allegation that they were, as such trustees, the lawful Owners and holders thereof.
The objection that the allegations were too indefinite, could be taken only by motion. (Seeley v. Engell, 3 Kern., 542; People, ex rel. Crane, v. Ryder, 2 id., 433; Cheney v. Fisk, 22 How. Pr., 236; 15 N. Y., 425; 23 id., 491.)
The transfer of the note by the company to the plaintiffs as collateral security for the benefit of the sixteen persons and firms' who had deposited theirs in the plaintiffs’ hands for the benefit of the company, was not in violation óf any statute or principle' of the common law, and was ad valid as if the transfer had been made directly to those persons and firms.
The allegations in the complaint, to which allusion has been made, justify the conclusion that the officers of the Insurance Company were authorized by a resolution or\by-láw of the board of trustees to borrow money or notes, and pledge the defendant’s note and other collateral securities for the payment of the- same.
The writing pursuant to which.the transfer was made, constituted the plaintiffs trustees of an express trust, within the meaning of section 113 of the Code, as to the defendant’s note, and they may maintain the action thereon in their own names without joining the sixteen persons and firms for whose benefit it is prosecuted, unless they are restricted by the writing to a sale of the note. (Considerant v. Brisbane, 22 N. Y., 389.)
There can be no doubt that the plaintiffs could have received the money due upon the note; and there would *409 have been no ground for questioning their right to enforce payment of it by suit, if the words in the writing, authorizing the plaintiffs to sell it had been left out. It is evident that those words were inserted, not with the view of restricting or curtailing the authority of the plaintiffs in respect to- the notes and other collateral securities placed in their hands, but for the purpose of enlarging it so they would have the right to sell the note and other collaterals pledged to them as security without notice to the company, and to enable them to raise money without delay, by a sale of the same, in case of a necessity for such a course. For without those words in the writing the plaintiffs would not have possessed authority to sell the note or any of the collateral securities in their hands, until they had given personal notice to the company to redeem the same. (Wheeler v. Newbould, 16 N. Y., 392.) It is, therefore, clear that the authority given to the plaintiffs to sell the note did not take away their right to collect it. A similar conclusion was arrived at by the Superior Court of the city of Few York, when this writing was before that court in Nelson v. Wellington (5 Bosw., 178).
These conclusions show that the demurrer to the complaint was not well taken, and. that the judgment of the general term of the Supreme Court should be reversed, and the order of the special term affirmed, with costs.
All the judges concurring,
Judgment reversed, and judgment at special term affirmed.