## NELSON *a.* EATON.

*Court of Appeals, April Term*, 1863.

NOTES AND BILLS.—CAPACITY TO SUE.—CORPORATE POWERS.—
BORROWING MONEY.—PRESUMPTION IN FAVOR OF CORPORATE
ACTS.—COMPLAINT.

The right of action to recover money attends upon the right to demand and receive payment of it; and the debtor cannot avail himself of an agreement between the person who has the legal title and a former holder, not to sue the demand.

Insurance companies, without any special authority for that purpose, possess the incidental power to borrow money, and this includes the power to obtain indorsers or sureties, and to secure them by a transfer of assets; and it is immaterial whether such transfer is directly to the indorsers, or to trustees for their benefit.

No inference that a transaction was illegal can be allowed, unless absolutely required.

Acts done by a corporation which presuppose the existence of other acts to make them legal, are presumptive proofs of the latter. The absence of such precedent facts must be shown as matter of defence.

In an action by an assignee of assets of a corporation, if the transfer to him can be presumed to be legal, the complaint need not aver that the directors by resolution authorized the assignment, as prescribed by the statute.

Appeal from a judgment.

This action was brought by Thomas S. Nelson and James S. Sturges, trustees, against James Eaton, upon a note payable to the order of the Atlas Mutual Insurance Company, for $681.25.

The complaint set forth the making of the note, and that the plaintiffs obtained title to the same as indorsees, pursuant to the following instrument:

" We, the undersigned, agree to and with each other, and with the Atlas Mutual Insurance Company, that we will lend our notes to the amount of $5,000 each to said company, and will indorse each other's paper so given to an equal amount, on the conditions as stated below; such paper to be given to T. S. Nelson and J. S. Sturges, special trustees, to be used by them as they may think proper for the benefit of the company, and to be made at such date as they require; it being clearly understood that our liability on this paper, either as makers or

indorsers, shall be fully secured by a deposit of collaterals, to such an amount and of such character as said trustees shall think sufficient to cover all the paper used under this arrangement. Such securities shall be placed in the hands of T. S. Nelson and James S. Sturges, as special trustees for all parties concerned; and we hereby give to said special trustees full power and authority to sell said collateral securities, or any part or portion thereof, at the Board of Brokers, in the city of New York, or at public sale, or at private sale, or at the option of said special trustees, and without advertising the same, or otherwise giving us any notice. It is also clearly and distinctly understood, that should any loss occur ultimately to any parties to this arrangement, that such loss shall be borne pro rata by all the parties giving such notes. It is also understood that the said notes shall be paid by the company by the 1st of November, 1856; but the parties are, in the mean time, to give new paper for renewal for the same or a lesser sum, until finally paid in full as above."

The complaint further alleged that this instrument was executed by the company, and by sundry persons and firms, who gave their notes as therein provided; that the company became insolvent and was dissolved, and that the plaintiffs had not received sufficient moneys to reimburse the various creditors provided for in the instrument.

The defendant demurred. The demurrer was overruled at special term; but the order was reversed at general term. (See our report of the case, 7 *Ante*, 305. The decision at special term is reported in 15 *How. Pr.*, 305.)

The plaintiffs appealed to the Court of Appeals.

*Winchester Britton*, for the appellants.—I. The negotiability of the note was sufficient authority to the plaintiffs to receive it for value, without knowledge of illegal application, which is not presumable. But there was no illegal application. A power to negotiate its notes is expressly given to this company. (*Laws of* 1842, 217, § 12; *Laws of* 1843.) It is even among the general powers of corporations to hold, purchase, convey, and dispose of property. (*Willard's Eq.*, 734.) A corporation may make a promissory note (Attorney-general *a.* Fire Ins. Co., 9 *Paige*, 470), much more in its legitimate business may it

indorse and transfer one belonging to it. The allegation that the note was " duly indorsed in blank by the said Atlas Mutual Insurance Company, by an officer thereof duly authorized," is sufficient on demurrer. (People *on rel.* Crane *a.* Ryder, 12 *N. Y.*, 433 ; Polly *a.* Saratoga & Washington R. R. Co., 9 *Barb.*, 459 ; People *on rel.* Haws *a.* Walker, 2 *Abbotts' Pr.*, 421 ; Cheney *a.* Fisk, 22 *How. Pr.*, 236.) The transaction evidenced by the " trust-deed " was valid. It was but a loan by the persons represented by Nelson and Sturges to the company, and the receipt of collateral securities therefor, which was legal. (Barker *a.* Mechanics' Ins. Co., 3 *Wend.*, 96 ; Munn *a.* Commission Co., 15 *Johns.*, 49 ; Att'y-gen. *a.* Life Ins. Co., 9 *Paige*, 470 ; Moss *a.* Oakley, 2 *Hill*, 265 ; Barry *a.* Merch. Ex. Co., 1 *Sandf. Ch.*, 280 ; Beers *a.* Phœnix Glass Co., 14 *Barb.*, 358 ; Curtis *a.* Leavitt, 15 *N. Y.*, 62, 65 ; Furniss *a.* Gilchrist, 1 *Sandf.*, 53.) It would even be competent for the company to make such a trust. (*Angell & A. on Corp.*, § 241 ; Curtis *a.* Leavitt, 15 *N. Y.*, 62, 65 ; De Ruyter *a.* St. Peter's Church, 3 *Ib.*, 238 ; Barry *a.* Merch. Ex. Co., 1 *Sandf.*, 280 ; Leavitt *a.* Blatchford, 17 *N. Y.*, 534, *et seq. ;* Hoyt *a.* Thompson, 19 *Ib.*, 207.) The company, having received the benefit of it, could not now take advantage of it, if not valid, and hence defendant cannot. (Curtis *a.* Leavitt, 15 *N. Y.*, 8, 49, 50 ; Reuter *a.* Electric Tel. Co., 88 *Eng. Com. L. R.*, 341 ; Palmer *a.* Yates, 3 *Sandf.*, 138 ; Emmett *a.* Reed, 8 *N. Y.*, 312 ; Hoyt *a.* Thompson, 19 *Ib.*, 207 ; Holbrook *a.* Bassett, 5 *Bosw.*, 148.)

II. Plaintiffs sue as trustees of an express trust, and may maintain the action as such, unless their powers are so limited as to preclude such right. (*Code*, § 113.) Their powers are not so limited. The right to sell, expressly given by the agreement, does not exclude the right to collect, and, if necessary, by suit. The object evidently was to give an additional right to sell, which, without express agreement, plaintiffs could not have had. (Wheeler *a.* Newbould, 16 *N. Y.*, 392.) The right to present for payment, and receive the money when due, it will hardly be contended was not in the plaintiffs, and this right is not expressly given. The right to collect and to receive without suit being implied, why not as well the right to collect by suit ? *Expressio unius exclusio alterius* does not apply in such a case. (Nelson *a.* Wellington, 5 *Bosw.*, 178,

187.    See Jordan & Skaneatles Plank-road Co. a. Morley, 23 N. Y., 552.)

*Gilbert Dean*, for the respondents.—I. The trustees, admitting the validity of the trusts, are limited to the powers given them by the deed creating the trust. (Albany Fire Ins. Co. a. Bay, 4 N. Y., 9; Waldorf a. McComb, 1 *Hill*, 111; 3 *Ib.*, 361.) A statement of the manner in which plaintiffs acquired title to the note, is a necessary averment, when plaintiff claims through a corporation. (White a. Brown, 14 *How. Pr.*, 282; Thomas a. Desmond, 12 *Ib.*, 321.)

II. No previous resolution of the board of trustees to authorize the transfer of these securities is averred; which was necessary. (2 *Rev. Stat.*, 59, §§ 8, 9; charter.)

III. The corporation had no power to create such a trust. It is nowhere given in express terms, and it is not necessary to the business of insurance. (Beers a. Yates, 24 *Barb.*, 199; Mutual Benefit Life Ins. Co. a. Davis, 12 N. Y., 569.)

IV. The objection that the maker of the note, the debtor, cannot take advantage of this defect of the title, is untenable, because the transaction, if not authorized by a previous resolution of the board of trustees, is not only void but illegal. (Gillet a. Phillips, 13 N. Y., 114.) 1. The complaint shows that the corporation took this as a premium note for insurance; and by the charter, each person having a policy is a member of the company. 2. A corporation, or its stockholders and receivers, may in every case impeach any contract made by directors or other officers or agents, in the name of, and professedly by, such corporation. (2 *Den.*, 110; 5 *Ib.*, 567; 3 *B. & Ald.*, 1.) 3. A court will in no way enforce or aid a void or an illegal contract or transaction. To this rule there is no exception, unless a statute authorizes a party to an illegal contract or transaction to sue the other party. (Griffith a. Wells, 3 *Den.*, 226; Nellis a. Clark, 4 *Hill*, 424; Law a. Haden, 11 *East*, 300; 5 *B. & Ald.*, 351; 4 *Cow.*, 449; 1 *Story's Eq. Jur.*, 296, 298; Bell a. Leggett, 7 N. Y., 177.) 4. But the defendant, without reference to his connection with the company, may defend for want of title in plaintiffs. (Johnson a. Bush, 3 *Barb. Ch.*, 207.) 5. The trust-deed is a necessary and material part of the plaintiffs' complaint; and that not showing affirmatively the plain-

tiffs' title, the demurrer is well taken. (Bangs *a.* McIntosh, 23 *Barb.*, 598; White *a.* Joy, 13 *N. Y.*, 83; Beach *a.* King, 17 *Wend.*, 197.)

SELDEN, J.—The grounds on which the demurrer was sustained in the Supreme Court are stated in the opinion as follows. "The trust instrument expressly specifying the terms on which the notes came into the plaintiffs' hands as trustees, expressly giving them the right to sell, &c., but not to sue, the plaintiffs had no right to bring this action as such trustees. There is no room for presumptions, arising from their being the holders of the note, that they themselves set out the manner in which they hold it and their rights over it. They had a right to sell it without advertising, or otherwise giving notice; but, with the express agreement before us, there is no place for a presumption that they had a right to sue it as the owners and holders."

I cannot assent to this position. The note constitutes a perfect obligation against the defendant. He was bound to pay it to the person having the legal title to it. He was not interested in the trust, and the creation of it had no effect whatever upon his rights or duties. By the indorsement and transfer of the note to the plaintiffs they obtained the legal title to it, and the right, the sole right, to demand and receive payment of it. The right of action to recover money attends upon the right to demand and receive it, and, I think, cannot be severed from it. (Flagg *a.* Munger, 9 *N. Y.*, 492.) If the plaintiffs could not maintain an action on the note, then no one could maintain it, for they alone had the legal title; and it would present a strange anomaly in the law, if a note, absolutely due to a living person, could be so placed that no person could maintain an action upon it. If such cases can exist, this is not one of them. The power of sale given to the plaintiffs by the trust contract was designed to give them an authority, which, by the mere transfer of the notes to them as collateral security, they would not have had. I think it was not designed to take away any power which the transfer of the legal title to the notes gave them. But if such was the design, even if the instrument of trust had contained an express agreement on the part of the plaintiffs not to sue the notes, it would not have

aided the defendant in this action. Having the legal title to the note, they had a perfect right of action against the defendant, and he could not avail himself of their covenant with strangers not to prosecute such action. (Bank of Chenango *a.* Osgood, 4 *Wend.*, 607, 612.) Such an action might be a breach of trust, but that would not aid the defendant, the trust in no way affecting either his rights or his duties. The error in the judgment in this case has arisen from a failure to distinguish between the legal and equitable interests in the note, which have no connection with each other. The legal interest depends upon the indorsement and transfer of the note by the insurance company to the plaintiffs, and in that alone has the defendant any interest. That transfer being perfect, the plaintiffs' right of action was perfect. The trust did not in any way affect it. I have thus far assumed that the transfer of the note was valid. Its validity, however, is denied. First, on the ground that the insurance company had no power to create such a trust; and, second, that, if it had such power, the transfer was void for want of a previous resolution of the board of trustees authorizing it.

It has often been decided that insurance companies, without any special authority for that purpose, possess the incidental power to borrow money; and such power, from the nature of their business, would seem to be indispensable to enable them to meet the sudden emergencies to which they are liable. (Furniss *a.* Gilchrist, 1 *Sandf.*, 53; Curtis *a.* Leavitt, 15 *N. Y.*, 9; Mead *a.* Keeler, 24 *Barb.*, 20.) The power to borrow must include the power to obtain indorsers or sureties, and to secure them by a transfer of assets for that purpose; and it cannot be material whether such transfer should be directly to the indorser, or to a trustee for his benefit. In either case, the assets would be equally held in trust. The power to create such a trust by a corporation not specially authorized was settled in the case of Curtis *a.* Leavitt (*supra*).

There are several conclusive answers to the objection that a resolution of the board of trustees was required to make the transfers of the note valid.

I. The statute only applies to transfers of corporate assets " exceeding the value of one thousand dollars." (1 *Rev. Stat.*, 591, § 8.) The note transferred was $681 only, and all which

appears beyond that is, that certain other notes were transferred, the amount not being shown. We cannot assume from this statement that the amount transferred exceeded $1,000. We could hardly indulge such a presumption, if it were necessary to make the transaction legal; much less can we do so where the effect would be to make it illegal. No inference, not absolutely required by the facts alleged, can be allowed which will produce that result.

II. If the notes transferred exceeded in value a thousand dollars, the court would not presume that the transfer had been made in violation of the statute. That is a fact, if it exists, to be shown in defence. "Acts done by a corporation, which presuppose the existence of other acts to make them legally operative, are presumptive proofs of the latter." (Per STORY, J., in Bank of United States *a.* Dandridge, 12 *Wheat.*, 79.) "Illegality is never presupposed; on the contrary, every thing must be presumed to have been legally done, till the contrary is proved." (Bennet *a.* Clough, 1 *B. & A.*, 461.)

III. I am inclined to regard the averments of the complaint sufficient, if it were necessary for the plaintiffs to show affirmatively a compliance with the statute in question. (12 *N. Y.*, 436, 437; 22 *How. Pr.*, 236.) The case differs very much from that in 9 *Abbotts' Pr.*, 198. It is not, however, necessary to decide this question; nor whether the want of a compliance with the statute is a defect of which the debtor could take advantage. (10 *N. Y.*, 60; 33 *Barb.*, 340.) I doubt the soundness of the opinion expressed in these cases, that none but the corporation, or its creditors or stockholders, could impeach such a transaction for the want of the previous action of the board of directors. The transfer in such case would be not only unauthorized, but illegal (13 *N. Y.*, 119); and, I think, void, even as to strangers. However that may be, the plaintiffs here would be protected by the saving clause of the statute in favor of *bona-fide* purchasers, if it were necessary for them to invoke that provision in their behalf. (1 *Rev. Stat.*, 591, § 8; 15 *N. Y.*, 11.)

The judgment of the general term should be reversed, and the order of the special term affirmed, with costs.

All the judges concurred.