J. S. ABBOTT and E. A. ABBOTT *vs.* WM. H. ASPINWALL.

One who is a subscriber to the capital stock of a corporation, and has appeared as such on its books, and has attended meetings of the stockholders and acted as one of them, cannot, when sued as a stockholder, for a debt due from the company, defend himself on the ground that although the company has been in operation for more than a year, ten per cent of the capital stock has never been paid in.

The statute makes each stockholder liable for the debts of the company, in his individual capacity, severally, and not jointly with the others. It is not necessary, therefore, to make all the stockholders defendants to an action by a creditor of the corporation. Each creditor has a remedy against each stockholder.

The remedy is not against such stockholders, only, as have not paid for their stock; but it is against "stockholders," without any such restriction. The stock *held* gives the measure of the recovery; not the amount of stock unpaid for.

APPEAL from a judgment entered at a special term. The action was brought by the plaintiffs, creditors of the "Mexican Ocean Mail and Inland Company," against the defendant, a stockholder of the company, to recover the amount of their claim. This company is a corporation organized under an act of the legislature of the state of New York, passed April 12, 1852. (*See Laws of* 1852, *p.* 302, *and the amendments thereto; Laws of* 1853, *pp.* 202, 1138.) The capital of the company was divided into fifteen thousand shares of $100 each. The company was organized and went into operation in January, 1853 ; their principal office being in the city of New York. The defendant became a stockholder and owner of 250 shares of the stock of the corporation on the 28th of March, 1853, and has always continued such stockholder, and participated in the management of its affairs. In May, 1853, the company gave the plaintiffs an order to make for them wagons and vehicles for their mail and passenger service; they were made, and delivered to the company during the summer and fall of 1853, and were forwarded by them to Mexico for the company's use. For the payment of these wagons the company made and delivered to the plaintiffs their two promissory notes, amounting to $4554.82. The notes

Abbott *v.* Aspinwall.

were not paid. The company also were indebted to the plaintiffs in the sum of $420 for work, labor and services performed, and in $34.30 for freight and carting paid. The plaintiffs obtained a judgment against the company upon these notes and indebtedness, on the 7th of July, 1854, and issued an execution thereon, which was returned unsatisfied. Issue was joined in this action by the answer of the defendant, on the 24th of November, 1854. The action, by an order of the court, was referred. The referee reported, that the plaintiffs were entitled to recover from the defendant the amount of the notes and indebtedness. Upon the argument of the case before the referee, the defendant sought to avoid his liability upon the ground that the 10 per cent mentioned in the second section of the act of April, 1852, had never in fact been paid in, and that, therefore, the company was not legally incorporated. Upon the trial, Robert G. Rankin, the president, was examined as a witness, who swore the 10 per cent was paid in. The referee reported, however, as a matter of fact, that it was not paid in ; but he further reported, " that, as matter of law, the omission to pay in 10 per cent of the capital stock is not a defense to the defendant in the action, against the claim of the plaintiff." The referee also reported, as matter of fact, that the defendant on the 28th of March, 1853, became the owner of 250 shares of the stock of the company, and continued to be a stockholder and the owner of said 250 shares during the period when the above named liabilities and indebtedness in favor of the plaintiffs were contracted and accrued; and, as such stockholder, had taken part in the management of the company. The evidence on this point being, that he was surety to the United States government for the company on its mail contracts ; that he was interested in contracts with the company for its sea service; that he had attended meetings of the stockholders as late as May, 1854 ; that in the spring of 1854 he purchased additional stock when aware of the plaintiffs' claim, purchasing this stock directly from the company, and

Abbott *v.* Aspinwall

to raise a fund to pay its debts, one of which was in judgment against the company; that in the spring of 1854 he was the principal actor at a meeting for the election of directors, and made suggestions for the disposal of its reserved stock and mail pay.

The defendant appealed to the general term.

*H. C. Van Vorst,* for the plaintiffs.

*Varnum & Turney* and *Wm. M. Evarts,* for the defendant.

*By the Court,* MITCHELL, P. J. The defendant is sued as a stockholder of the American Ocean Mail and Inland Company, for a debt due by the company. The only questions raised by the defendant's points are, 1st. Whether the defendant can be liable as a stockholder, if ten per cent of the capital stock had never been paid in ; 2d. Whether he can be liable, he having once paid to the company (not to a creditor) the amount of his subscription in full, while other stockholders who have not paid in full are not sued ; and 3d. Whether it was necessary to make all the stockholders parties to the action.

The company (if incorporated) was incorporated under the act of 1852, chapter 228. They filed in the proper offices the certificates required by the act. They went through the form of receiving from one Ramsay, as a subscriber, $1,400,000 in gold at one of the banks in this city; about $80,000 in gold being brought from the vaults of the bank and placed on its counter, and then delivered by Ramsay to an officer of the company, the company delivering it back to Ramsay in payment by the company for rights transferred by him to it, estimated at the total amount of his subscription, and then Ramsay delivered the $80,000 back to the bank. Such a contrivance may not have protected the company from the annulling of the franchise assumed by it, in a proceeding instituted for this purpose by the state. But neither the company nor Ramsay could ever set up that the payment was not made in

full, both for the rights transferred by him and for his subscription, when the arrangement between them was contrived for the very purpose of complying or appearing to comply with the law. As between them it was a good payment, and far exceeding ten per cent on the whole capital. So also it would affect all stockholders, who were not in some way defrauded by the contrivance. The defendant gave no proof that such was the case with him. He became a stockholder after this nominal payment was made, and acted at a meeting of stockholders where the president of the company read its minutes, from its commencement to the day of the meeting, and explained its position. From this he must probably have known the nature of the payment made by Ramsay, and yet he continued to act as a stockholder.

If we are to assume (as the referee finds) that the ten per cent was not paid, then the defendant must maintain the position that one who is a subscriber to the stock of a company, and has appeared as such on its books, (and has acted as a stockholder,) cannot be liable to creditors, if he can show that the company has not received ten per cent of its capital from its subscribers, although the company has been in operation (as this company was) for more than a year.

The act of 1852 authorizes "any seven or more persons who may desire to form a company" for these purposes, to make, sign, acknowledge and file a certificate, stating among other things "the specific objects for which the company shall be formed," and then declares (§ 2) that "*when* the certificate shall have been filed as aforesaid, and ten per cent of the capital named paid in, the persons, &c. shall be a body politic and corporate." The effect of this section is that when its two requirements are complied with, the certificate duly made and filed, and the ten per cent paid in, the associates become a body corporate, even as against the people, and are entitled to, and possessed of, the franchise of a corporation, as effectually as if it had been a grant from the state ; and that on *quo warranto* by the state, they could set up and sustain their title.

It in no way alters the law as to the inability of third persons, in certain cases, to sustain the denial of the existence of a corporation. If this corporation had continued for ten or more years, and had during all that time exercised its franchise, and then it had been discovered that the certificate was not in due form, or had not been duly acknowledged, the state could raise the objection; but neither the company, nor its stockholders, nor its debtors, could do so. The limitation in section 2 was made for the benefit of the state, not for the company or its stockholders. A different construction would defeat one great object of the act, which was to make "such persons as *appear* by the books of the corporation or *association* to be" stockholders liable to the creditors of the association. (*See section 9.*) The expression "or association" may have been introduced to avoid the difficulty now raised; but whether it was so or not, the clause quoted holds out to creditors that all which they have to look to, in order to ascertain who are liable, is the books of the association, and warns the stockholder that when he allows his name to be placed on their books, he assumes a liability to the creditors of the company.

The general rule also has been that a person dealing with a company which is in the user of its franchise cannot set up that it has no corporate existence, either in consequence of acts which would cause a forfeiture of its charter, or of the omission of acts which should have been performed before it could acquire a perfect title as against the state. In *McFarlan* v. *The Triton Ins. Company*, (4 *Denio*, 392,) McFarlan had given his bond to the company, and being sued on it, offered to prove under the plea of *nul tiel corporation*, that the subscriptions to the capital stock were not taken in accordance with the act; that no money was paid to the commissioners by the subscribers, but that the commissioners gave credit. The company commenced its business and continued it for two years. There was evidence that the whole of the stock was *taken* before the company was organized, but the report seems to imply that it was not paid for. Under the act, the

Abbott *v.* Aspinwall.

company was not to commence business until the whole of the capital stock had been *paid*, or secured to be *paid*, and a deposition to that effect made and filed. Bronson, Ch. J., said: " Upon such proof there could be no doubt but that the plaintiffs were a corporation, so far as third persons are concerned. It would have been enough for the plaintiffs to show the charter, and the user under it. It is unnecessary to inquire what may be the rights of the people in relation to this corporation, or as against the individuals who were concerned in getting it up and setting it in motion. The defendant does not represent the sovereign power, and has nothing to do with the question whether the company should be dissolved. So long as the state does not interfere, the company may sue or do any other lawful act, whatever sins may have been committed *in bringing the body into existence.*" The doctrine of *Corning* v. *McCullough*, (1 *Comst.* 47,) is that the stockholders in these cases are liable, not under the statute, but primarily as partners, with a protection against being sued until execution is returned unsatisfied against the company. That would make it quite immaterial whether the company were duly incorporated or not ; the statute only operating to enable *each* creditor to sue *each* stockholder to the extent of his stock, instead of suing all together.

The 6th section of the act recites that the stockholders shall be *severally individually* liable to the creditors of the corporation, to an amount equal to the amount of stock *held* by them respectively, for all debts and contracts made by such corporation, until the amount of its capital stock shall have been paid in and a certificate made and recorded. This makes each stockholder liable for the debts of the company in his individual capacity, severally, and not jointly with the others. It is not necessary, therefore, to join the other stockholders as defendants. The object is not to compel a *pro rata* contribution. To do that, not only all solvent stockholders would be necessary defendants, but all the creditors of the company would be necessary plaintiffs. Instead of that, each creditor

has a remedy against each stockholder.   In fact, as each stockholder is made "severally" liable, it does not appear that an action could be sustained against more than one, unless on behalf of all the creditors against all the stockholders, not under the act but for the purposes of equitable contribution. ·

The remedy is not against such stockholders as have not paid for the stock, but is against "stockholders," without any such restriction.   It is not to the extent of their unpaid subscriptions, but "to an amount equal to the amount of stock *held* by them respectively."   "The stock *held*" gives the measure of the recovery, not the stock unpaid.   As each is liable to the extent of the stock held by him, and this amount would vary with different persons, it also shows that the action was not to be joint but several.

The judgment for the plaintiff for the debt demanded, which was less than the stock held by the defendant, should be affirmed with costs.

[NEW YORK GENERAL TERM, December 21, 1857.   *Mitchell, Clerke* and *Davies,* Justices.]