HENRY W. SLOCUM *vs.* ELIZABETH WARREN & others.

Decision in *Slocum* v. *Prov. Steam & Gas Pipe Co., supra,* p. 112, reaffirmed.

DURFEE, J. This is a petition for a preliminary injunction to restrain the defendant, Elizabeth Warren, from selling the plaintiff's interest in certain land, under an execution issued in her behalf against the American Steam and Gas Pipe Company, her claim being that said company is a manufacturing corporation in which the plaintiff is a corporator, and as such liable for the corporate debts under Rev. Stat. ch. 128. The case is in many respects the same as the case of *Slocum* v. *Providence Steam & Gas Pipe Company,* and others, formerly decided by this court; but the bill in this case contains allegations which the bill in that case did not contain; and if these allegations are sustained, presents, as the plaintiff claims, new grounds of relief. We will therefore first consider this case in respect to the allegations which distinguish it from the former case.

The bill alleges that the plaintiff is not a stockholder; that

he sold to one Nahum Perry a buggy wagon, sleigh, and harness, for $300, thereafter to be paid; that Perry, in lieu of making the payments, delivered to him a certificate of three shares of the stock of said company; and that if any transfer thereof was made on the books of the corporation, it was made without his knowledge and for the fraudulent purpose of subjecting him to the liabilities of a stockholder. It appears, however, that the certificates were certificates of stock running in favor of the plaintiff, made in the usual form, and Nahum Perry testifies that the shares were transferred to the plaintiff according to his agreement with the plaintiff, and that the plaintiff receipted for them on the books of the company, and received and retained the certificates. And there is other evidence tending to prove not only that the plaintiff was regarded by the company, but also that he regarded himself as a stockholder; so that we think the allegation of fraud in the transfer of the stock to him is not sustained.

The bill alleges that the corporation is not indebted to Elizabeth Warren in any sum whatever. The evidence shows that the alleged debt was for a loan of $2,000, procured for the company by the said Elizabeth. The plaintiff claims, however, that the loan was not a *bonâ fide* loan, but was money advanced to the company to procure the release of her sons from certain liabilities which they had contracted to the company, and that it was understood between her and the company that the note, given by the company for the money advanced, should be collected, not from the company, which was insolvent, but from the plaintiff. But the said Elizabeth Warren and William Sheldon, who acted as her agent and adviser in making the loan, and Henry H. Brown, who was the treasurer of the company when the loan was made and negotiated the same, all make affidavit that the $2,000 loan by Elizabeth Warren to the company had no connection with the release of her sons from their liabilities. It is true the circumstances of the loan are peculiar, but we do not think there is anything amounting to proof of fraudulent complicity between the company and the said Elizabeth Warren, such as is charged by the plaintiff.

The bill alleges that the writ in the action of Elizabeth Warren against the company was served only on the plaintiff, and

that the plaintiff filed a plea in said cause, but that the court decided that he had no right to appear and answer the same. But it appears that the writ was.served in a mode authorized by the statute, and that the plaintiff was refused permission to answer the. case because he had no authority to answer it for the corporation.

The bill also alleges that the said Elizabeth did not know of the plaintiff's pretended liability as a stockholder, and did not give credit to the company on the faith of his being such stockholder. This allegation is abundantly negatived by the evidence, and is entirely without support.

These are the allegations upon which the plaintiff' claims to be entitled to relief upon grounds distinct from those presented in his former case, and we do not think they are sufficiently sustained by the evidence, to authorize the granting of the relief which he seeks.

The plaintiff also asks us to review the decision made in the case of *Slocum* v. *The Providence Steam & Gas Pipe Company*, upon the ground that he has discovered, since the trial of that case, precedents which are in conflict with the decision then made. We very cheerfully, in view of the importance of the case, accede to his request.

The facts on which the question to be decided arises are these : In 1863 a public statute was passed which provided that no act of incorporation granted after the passage thereof, with certain exceptions, should take effect until the persons therein incorporated should have paid to the general treasurer the sum of one hundred dollars, if the capital limited by the act was the sum, or any less sum than one hundred thousand dollars. In 1867 the charter for the Providence Steam and Gas Pipe Company was granted, the capital named being seventy-five thousand dollars. The grantees of the charter proceeded to organize under it, and to transact business as a corporation without first paying the hundred dollars as required. The plaintiff became a stockholder, and the defendant, Elizabeth Warren, made the loan as above stated, relying for repayment not only upon the credit of the company, but also upon the personal liability of the stockhholders, and of the plaintiff especially, as one of them. The company having failed to repay the loan, the said Elizabeth Warren

seeks to charge the plaintiff personally as a corporator, and the plaintiff replies that he cannot be so charged, because, by reason of the omission to pay the tax, the charter never went into effect, and consequently the supposed corporation never had any legal existence. +We decided in the former case that having, by becoming a stockholder, helped to hold the company out as a corporation, he could not be permitted to say, when pursued by a creditor of the company, that he and his associates or predecessors had omitted to do an act which they ought to have done before organizing as a corporation, and that in consequence of this delinquency. the company was not (what it purported to be) a legally established corporation. The plaintiff maintains that this decision was erroneous, and in support of his view, relies especially upon the cases of *Hudson* v. *Carman*, 41 Maine, 84 ; *Unity Insurance Company* v. *Cram*, 43 N. H. 636 ; *Utley* v. *Union Tool Company*, 11 Gray, 139 ; and *Gardner* v. *Post et al.* 43 Pa. St. 19. We propose to consider these and some of the other cases bearing upon the question, somewhat in detail.

*Hudson* v. *Carman* was an action to charge a stockholder, under the statute of Maine, upon a debt due from the corporation, judgment thereon having been rendered against the corporation. The plaintiff offered the books of the corporation to prove its acceptance of the charter and its organization. The judge ruled that the existence and organization of the corporation should first be proved *aliunde* before the books could be introduced. To this ruling the plaintiff excepted, and his exception was sustained by the Supreme Court. It does not appear but that the corporation was duly created and organized, the question being simply by what evidence these facts should be proved. In deciding this question, the court remarked — though the remark was not called for by the question before them — that in such an action it was necessary, if required, that the existence and organization of the corporation should be established, and that judgment against the company was not conclusive of such existence and organization.

*The Unity Insurance Company* v. *Cram* was an action upon a promissory note given by the defendant for insurance by the plaintiff company, which claimed to have formed as a corporation for mutual insurance under the New Hampshire statute. It

appeared that the company in its formation had not observed the requirements of the statute, and the court held that it was not a corporation authorized to issue a policy of insurance, and gave judgment for the defendant.

*Utley* v. *Union Tool Company* was a proceeding under the Massachusetts Statute of 1851, to charge certain persons as stockholders of a manufacturing corporation, judgment having gone against the alleged corporation by default. In the trial at *nisi prius*, the court ruled that it was not necessary to prove the existence of the corporation, that having been admitted by the default. An exception taken to this ruling was sustained by the Supreme Judicial Court, which declared that, in such a proceeding, the burden of proof was on the plaintiff to show the legal existence of the corporation.

*Gardner* v. *Post et al.* was an action against the directors, officers, and agents of a bank, described in the declaration as a corporation lawfully established, for unlawfully issuing notes of the denomination of $5, $10, $20, and $50, of which the plaintiff had received and held $30,000. The court held that a charter, or letters patent from the government, were necessary to create the bank a body corporate, and that these not having been proved by the plaintiff, or *in any manner attempted to be supplied*, he failed in supporting his declaration.

The question of estoppel does not appear to have been raised in either one of these cases, and though we are not disposed to think that they are on that account of no weight as authority, we nevertheless do think that they are entitled to very much less consideration than they would have been if the question had been raised.

The plaintiff also cites the cases of *Kamman* v. *Sinclair*, 16 Ind. 190 ; *Jones* v. *Cincinnati Type Foundry Company*, 14 Ind. 89 ; *Huston* v. *Cincinnati R. R.* Ib. 279. The view expressed in these cases is, that if a company organizes as a corporation where there is no law, or only an unconstitutional law, authorizing such organization, the doctrine of estoppel does not apply ; but that where there is a law under which the corporation might be rightfully organized, there the doctrine of estoppel is applicable. It seems to us that these cases tell rather against than in favor of the plaintiff: for here there was a charter duly granted, and

though it was not to go into effect until a certain tax was paid, there was nothing to prevent the grantees of the charter from paying the tax, and then organizing with perfect regularity, both in fact and in law. See also *Brownlee* v. *The Ohio, Indiana & Illinois R. R. Company*, 18 Ind. 68.

The plaintiff also cites cases in which it has been held that a corporation duly established as such is not estopped from denying its liability where there is a want of power to contract the liability, the reason being, he says, that otherwise the powers of the corporation might be indefinitely enlarged; and he argues that, in the case at bar, the doctrine of estoppel is still less applicable, inasmuch as the company was acting not merely in excess of its corporate powers, but without any corporate power whatever. But in the case at bar, the defect of power exists not by reason of any insufficiency of the grant, but by reason solely of a delinquency on the part of the grantees of the power; and the estoppel, if applied, would be applied not to prevent an appeal to the charter to show a want of authority, but to prevent the introduction of evidence by the company or its members to prove their own delinquency. We do not think that in such a case there should be any hesitation to apply the doctrine of estoppel from fear that it would lead to an indefinite enlargement of the powers of the corporation. And see *Bargate* v. *Shortridge*, 5 H. L. Cas. 297, 318; *Zabriskie* v. *Cleveland, Columbus & Cincinnati Railroad Company et al.* 23 How. U. S. 381.

Still other cases were cited by the plaintiff, but none which were stronger in his favor than those which we have considered. On the other hand there are cases in which the doctrine of estoppel has been applied both in favor of and against corporations, which, for the light they throw on the question under review, are entitled to consideration.

There are numerous cases in which it has been held that where a person has entered into a contract with a company as a corporation, and has received the benefit of his contract, he is estopped to deny the legality of its organization. Abbott's Dig. Law of Corp. p. 333, and cases cited in § 39 *et seq.*; Herman's Law of Estoppel, § 571.

In *Zabriskie* v. *Cleveland, Columbus & Cincinnati Railroad Company et als.* 23 How. U. S. 381, the directors of a railroad

company had entered into a guaranty which they could not legally enter into without the assent of two thirds of the corporation, given at a called meeting, or until after the provisions of a certain act had been accepted and the certificate of its acceptance filed with the secretary of state. There was no proof of such certificate, but, the guaranty having been ratified by the corporation without dissent, the court refused, at the instance of a corporator, to enjoin its execution. The court said : " The acceptance of these acts may be inferred from the conduct of the corporators themselves. The corporation have executed the powers and claimed the privilege conferred by them, and they cannot exonerate themselves from the responsibility, by asserting that they have not filed the evidence required by the statute to evince their decision." See also *Owen* v. *Purdey et al.* 12 Ohio St. 73.

In *The U. S. Express Co.* v. *Bedbury*, 34 Ill. 459, the company was proceeded against as a corporation, by process of garnishment, and appeared to the suit by the name of " The United States Express Company." One question raised related to the sufficiency of the service, which was valid only in case the company was a corporation. The court decided that the name in which they had appeared imported a corporation, and remarked : " It seems to comport with reason, that when an association of persons assume a name which implies a corporate body, and exercise corporate powers, they should not be heard to deny that they are a corporation. When they do act and contract, they are estopped from denying their corporate liability."

In *Rockville & Washington Turnpike Road* v. *Van Ness*, 2 Cranch C. C. 449, the charter of the company required that 1,500 shares of the stock should be subscribed as a prerequisite of the organization. The defendant, a subscriber, being sued on his subscription, offered to show that the 1,500 shares had not been subscribed, some of the subscriptions being without authority ; but it appearing that the company had been organized, the defendant himself taking part and being elected a manager, the evidence was rejected. The court said : " It is not competent for any stockholder to make the objection to the existence of the corporation, inasmuch as they have elected the president and managers, and have had all the benefits of a corporation.

They cannot now set up as a defence their own want of power."
And see *Rice* v. *Rock Island & Alton Railroad Company*, 21
Ill. 93 ; and see *West Winstead Savings Bank* v. *Ford*, 21 Conn.
282 ; Ib. 142.

In *Galveston Railroad* v. *Cowdrey*, 11 Wal. 459, it was de-
cided that *bonâ fide* holders of railroad bonds, executed in due
form and by the proper officers, could not be prejudiced by the
fact that the mortgage given to secure the same was executed out
of the state, or by virtue of a resolution adopted by the directors
at a meeting held out of the state.   Justice Bradley, in deliver-
ing the opinion, said :   " We see no reason why it should not be
estopped by the action of its directors in another territory, when
that action is the basis of negotiations by which third parties
have *bonâ fide* parted with their money, and the company has re-
ceived the benefits of the transaction."

The case of *Camp* v. *Byrne*, 41 Misso. 525, is a still stronger
case.   In that case the charter was granted by the State of Ten-
nessee, and the only organization under it was effected in Mis-
souri.   The court held that the organization of the company did
not constitute it a corporation ; but also held, at the same time,
that the defendant, a subscriber to the stock thereof, who had
given to the company, as a corporation, his note for the amount
of his subscription, when sued by a *bonâ fide* indorsee of the note
for value before maturity, was estopped from denying the legal
existence of the corporation.

In Massachusetts it has been held that a company sued as a
corporation formed under a general statute is estopped to set up,
for the purpose of defeating the action, the falseness of the cer-
tificate filed by them as a compliance with the requirements of
the statute, or to avail itself of its omission to publish the cer-
tificate of its organization required by the statute.   *Dooley* v.
*Cheshire Glass Company*, 15 Gray, 494.   See also *Callender et
al.* v. *Painesville & Hudson R. R. Co.* 11 Ohio State, 516.

In New York it is declared to be the law that, where there is
a colorable but defective organization under a general law, the
company by acts of user becomes a corporation *de facto*, and no
advantage can be taken of the defect, collaterally, by any person.
*The Buffalo & Alleghany R. R. Co.* v. *Carey*, 26 N. Y. 75 ; and
see *Eaton et al.* v. *Aspinwall*, 19 N. Y. 119 ; *Holmes* v. *Gilliland*,

Slocum *v.* Warren.

41 Barb. 568; *Abbott* v. *Aspinwall*, 26 Barb. 202; *Mead* v. *Keeler*, 24 Barb. 20; *Leonardsville Bank* v. *Willard et al.* 26 N. Y. 574.

It is true these cases are not precisely like the case at bar, but they are cases which illustrate the application of the law of estoppel in respect to corporations, or companies acting as corporations, or which illustrate to what extent the corporate existence of a company acting as a corporation can be collaterally questioned. And we think it is safe to say upon the authority of these cases, that at least where there is an act or charter in existence, under which a company by taking the proper steps can become a corporation, if a company does *de facto* organize and hold itself out as a corporation, contracting obligations as such, it cannot, when sued upon such obligations, by persons who have dealt with it as such in good faith, be permitted to avoid a corporate liability thereon, by setting up that it has not taken all the steps prescribed as conditions precedent to its legal existence as a corporation. If this be so in regard to the company as a whole, we do not see why it is not equally so in regard to each member of the company individually, in so far as membership imports an individual liability. In this case, it is said there was no act or charter; but in our opinion there was a charter duly granted by the legislature, subject only to a condition that it should not take effect until a certain act should be performed; but inasmuch as this act could have been performed, as it ought to have been performed, by the grantees of the charter before their organization as a corporation, the case does not, in our view, substantially differ from cases which are clearly within the rule above stated. Indeed it is frequently the case that a charter is granted subject to an implied condition, that the grant shall not take effect until it has been duly accepted; and yet, as we have seen, the doctrine of estoppel may be applied to prevent the want of such an acceptance from operating to defeat a just claim. *Camp* v. *Byrne*, *supra;* and see *Tobacco Pipe Makers' Co.* v. *Woodroffe*, 8 D. & R. 30, cited in Abbott's Dig. Law of Corp. p. 331, § 23. In this case the company had only to pay into the treasury of the state one hundred dollars, and all would have been right. When it organized as a corporation, and from year to year continued doing business as such, it as much as said, and

each one of the stockholders as much as said, that that sum had been paid; and now neither the company nor any one of the stockholders ought to be heard to assert the contrary in order to escape any liability to which he or it would have been subject if the payment had been duly made.

This decision is doubtless a hard decision for the plaintiff, and we very much regret that his situation is such that he is so severely affected by it. But hard as the decision is for the plaintiff, it only subjects him to the liability to which he would have been subjected if the tax due the state had been paid, as it ought to have been paid, and therefore only to the liability which, as an honest man, he must be presumed to have intended to incur when he connected himself with the company.

*The petition for a preliminary injunction must be denied.*

*Bradley,* for petitioner.

*James Tillinghast,* for respondent.