J. S. Bosworth, Referee.
Each of these actions is brought against the defendants as trustees of the “ Pyrolusite Manganese Company,” a manufacturing corporation, to recover the amount of a debt alleged to be owed by the corporation to the plaintiff.
*172 In each ease it is sought to charge the defendants as such trustees, because the said corporation did not, within twenty days from the first of January, 1882, make and publish and file a report as required by law in such case made and provided, and also because the corporation has not since then made, published and filed such a report. These actions were commenced in March, 1883.
Some questions common to both actions will be first considered.
The defendant Dodge alleges in his answer in each action that one E. H. Woodward “at all the times alleged in the complaint was a co-trustee with this defendant of the Pyrolusite Manganese Company, and was, and is, a necessary party to this action.” The defendant Pond has not set up this defense; his answer in each action consists of a general denial of the allegations of the complaint.
The defendants insist that as the statute makes the trustees jointly and severally liable, they must be sued separately or jointly; that by bringing an action against more than one trustee the plaintiff has elected to treat these as jointly liable, and that his complaint is fatally defective because he has not made all the trustees parties defendant.
The common-law rule that persons jointly and severally liable must all be made defendants, if more than those thus liable were sued, applied only to actions arising ex contractu (Graham Pr., [2d ed.,] 91).
As to actions ex delicto the rule was different. In such a case the injured party could sue one, all, or any number of them {Id. 93, and cases there cited). Under the statute which subjects trustees to the liability here sought to be enforced, the liability is imposed for a neglect or omission to perform a duty which the statute enjoins. Uo right of recovery is based upon any contract, made or alleged to have been made by the trustees; it is based on their misconduct, for which, when established, they are subjected to a liability which the statute affixes as the penalty for such misconduct. *173 I think, therefore, that this defense is unavailing (Strong agt. Sproul, 4 Daly, 326; Quigley agt. Walter, 2 Sweeny, 195).
It is objected on behalf of the defendant Pond that he was not at any time a trustee of the company. He was as matter of fact elected a trustee on the 12th of July, 1881. All the stockholders were represented at that meeting, and all the votes cast were in favor of such election. He was elected in the pl-ace of Pauline Woodward, whose resignation was presented at that meeting and accepted. Her resignation was in terms conditioned “ to take effect after the legal election of the fourth trustee ” named in contract, bearing date June 29, 1881, the word “ legal ” is interlined and is in a different ink from the residue of the written resignation, but when or by what authority it was inserted was not shown. By the articles of incorporation the business of the corporation was to be managed by three trustees. It does not appear that any appropriate action has been taken to make four the number of the trustees. It would seem from the evidence that A. T. Woodward was elected a trustee at the same time. The acting trustees at that time were Edward H. Woodward, the president, and the defendant Charles E. Dodge. After the election of Pond and of A. T. Woodward, there was in form four trustees. As Pond was elected trustee in place of Mrs. Woodward, there is some force, as I think, in the position that he was legally elected a trustee, unless the condition of Mrs. Woodward’s resignation, as it was not literally and legally complied with, rendered such election a nullity. If she had resigned unconditionally, and Pond had thereafter been duly-elected a trustee in her place, I do not see that the validity of his election could be questioned, merely because then or thereafter there was a fourth trustee elected, without such prior action having been taken as would be necessary to make the election of a fourth trustee legal.
Mrs. Woodward’s resignation was in fact accepted, and Pond was elected as her successor. He then believed that he had been duly elected a trustee. About the 26th of June, *174 1883, he formally resigned as trustee, and the five shares of the stock,of the company which had stood in his name, from the time of his election as trustee, on the books of the company, was transferred to Charles C. Dodge, and on the evidence given, presumably at the request of Pond.
In the meantime Pond, though evidently paying but very little attention to the details of the company’s business, did various acts as secretary of the company. As such secretary, he signed notices of proceedings had, and also certificates of the ownership of stock in the company. On or about the 3d day of June, 1882, Pond and Dodge “as trustees of the Pyrolusite Manganese Company,” presented a petition to the supreme court, in which they prayed “ for a final order, dissolving said corporation and appointing one or more receivers of its property, and for such other relief as may be just.” That petition alleges “ that the said petitioners are one-half in number of the trustees of the Pyrolusite Manganese Company.” It was signed by Dodge and Pond, and verified by them on the 3d of J une, 1882. In the verification they, each for himself, swore, “ that the matters of fact stated in the foregoing petition and schedule thereto annexed are just and true, so far as he knows, or has the means of knowing.”
On that petition the supreme court made an order, on the 5th of June, 1882, by which, among other things, it was “ ordered that all persons interested in the said corporation show cause ” (at a time and place named, before Horace C. Chittenden, appointed a referee for that purpose) “ why the prayer of the petitioners should not be granted.” On the 29th day of December, 1882, the defendant. Pond was examined as a witness under this order of reference, and testified thus, viz.:
“ Q. You are, or suppose yourself to be, one of the trustees ? A. I suppose myself to be ; yes sir.
“ Q. How many shares of stock do you own ? A. Five shares.”
The evidence justifies the conclusion that litigation on the *175 orders, made on the petition, was going on at the time that Pond resigned his trusteeship, in June, 1883.
On the 17th of April, 1883, he attended a meeting of the trustees, at which time the trustees proposed a resolution, removing Edward II. Woodward from the office of president of the company, and elected Charles 0. Dodge president. Pond voted for the resolution, stating at the time of so voting, according to his own testimony, “ if I am a trustee I vote so and so.” This being translated means, as I understand it, that he said when he voted, “ if I am a trustee of this company I vote aye ” (or in favor of the resolution). After the vote was taken a notice was sent to Woodward, and published in one or more newspapers, signed by Pond as secretary of the company, declaring that at a stated meeting of the board of trustees of the company then held, Woodward was removed from the office of president of the company, and that Dodge was elected the president. I think that Pond cannot claim exemption from the liability imposed by statute upon the trustees of such a corporation, on the ground, that, technically, his election was not legally valid. As a matter of fact he was in form elected a trustee by those who had the right to elect one, if there was a vacancy to be filled. He supposed then that he was legally elected, and there is no reason to doubt that those who voted for his election supposed it to be legal. Without imputing to him motives which I think do not exist, he must have believed when he verified the petition before referred to, that he was in fact a trustee legally elected. Besides continuing to prosecute that petition as such trustee up to the time of his resignation of the office, he acted as trustee at a meeting held in April, 1883, at which Woodward was removed from the office of president, and another person was appointed president of the company. Without his presence and action at the meeting there could be no pretense that the removal of Woodward from office was effected.
Easterly agt. Barber et al (65 N. Y., 252), was a contest between the plaintiff, who had acted as trustee (but claimed *176 not to have been legally elected a trustee) and his co-trustees, to recover from these co-trustees the amount of a debt owing to the plaintiff by the corporation, of which they were such trustees, on the ground of the omission to make and file the report required by law. The court held (Id. 262), “ that a person having voluntarily assumed the character of a trustee, shall not be permitted to deny, either as to his co-trustees or the eestuis que trust, that he held that character, or to disavow his acts in that capacity. Accordingly the failure to file the report in this case was the plaintiff’s failure as well as that of his associates. They could only be held liable with him to a creditor who had been aggrieved by their conduct. The plaintiff has not been injured. The penalties of the statute were not given for his protection.”
The logical conclusion to which this decision leads is that if his co-trustees should be compelled to pay debts owing by the company, because they had not made and filed such a report, that they could recover from him his alleged part of the sum which they had thus been compelled to pay. That being so, there would not seem to be any good reason why such creditors could not recover from him directly. The language of the opinion imputes that they would only be held liable with him to a creditor who had been aggrieved by their conduct. If he would be held liable with them, he would be held liable if sued separately.
The act of Pond in filing the petition previously mentioned, with a view to have the corporation dissolved and a receiver of it properly appointed, was an act of peculiar significance, without the allegation that he was a trustee of the company. The court would not have had jurisdiction to act on the petition. The object and intent of that proceeding was to take property of the company out of the hands and control of the persons elected by the stockholders to manage its business. The result sought would change the relations of each creditor of the company to it, and impose the necessity upon them to resorting to other remedies than such as they *177 would have had so long as the corporation remained undissolved. It would seem to he fitting in such a case to carry the rule enunciated in Easterly agt. Barber et al. (supra), so far as to hold that a trustee thus acting, although, perhaps, not legally elected, was liable to the creditors of the corporation who was such. While during his trusteeship there was a failure to make and file the report required by law, I think he must he held liable on any default to make and file a report between the time of his election as trustee and the time of his resignation of the office.
But it is further objected that Pond was not a stockholder. If this were so he would nevertheless be liable if the views above expressed are sound.
One acting as trustee cannot be held to be exempt from liability as trustee merely because he was not a stockholder. But I think he was a stockholder. On the books of the company he appeared to be the owner of five shares of the stock; certificate (No. 43) was filled up and signed. It was signed by the president and Pond as secretary of the company. This transfer of stock to him was doubtless made to satisfy the requirement of the statute that a trustee must be a stockholder.
Although the certificate was not detached from the books, it was within the control of Pond, and he was at liberty to do with it as he pleased. Whether he paid for the stock or it was given to him is of no consequence. The fact that the corporate seal was not affixed to it while the stock stood in his name did not prevent the title to it from resting on him. A person buying stock of the company or of the owner of it, who receives from the company a certificate of his ownership thereof, authenticated by the signatures of its appropriate officers, will become the owner of such stock although the officers may have omitted to affix to it the corporate seal.
It is further insisted that the question of liability of the trustees is to be determined by section 12 of the General Law, as amended by chapter 510 of the Laws of 1875 *178 (j>. 589). That this section, as thus amended, provides first for corporations where the certificate of incorporation had been filed more than a year prior to the twentieth of January next, after the passage of the act, and requires but one report in such cases.
Next for corporations where certificate of incorporation might have been filed les than one year from the twentieth of January next, after the passage of the act, and as to the latter class, a certificate must be made and filed in each successive year. In the nature of things there is no reason why an annual report should be required in the latter class •of cases which will not apply in equal force to the other class. Section 12 of the act of 1848 requires that “ Every such ■company shall, annually, within twenty days from the first day of January, make a report, &c.” This act would require ,a report from a company though not organized more than thirty days prior to the succeeding twentieth day of January, The change apparently intended to be made was to dispense with the necessity of a report until after the lapse of one year from the filing of the certificate of incorporation.
The section, as amended, read in connection with the section amended, imports to my mind a requirment that annual reports be made, specifies the time when the first report shall be made, and whether in obedience to this requirement. The first report required by this act shall be made in January, 1876, or in January, 1877. A further report must be made twenty days from the first day of January in each year thereafter. If these views are correct the only question left is whether in January, 1882, or January, 1883, the corporation was a debtor to each of the plaintiffs, and the amount of such •debt. Pond was a trustee. No report was made in either of these years or before this action was commenced in March, 1883, or since then, so far as the evidence discloses. The debt ■of the corporation to Halstead between July 25, 1882, and December, both days inclusive, Halstead had loaned to the •company from time to time moneys to be used, and in fact *179 used, in the legitimate business of the company, and to pay its current expenses, amounting to $4,313.40 over and above a payment of $182.30, made on account of such loans. All of this indebtedness was due and payable as early as December 11, 1882, besides interest on each sum loaned from the time it was due and payable.
This debt, therefore, was contracted while Pond was a trustee, and was due before the time when the trustees should have made their report in January, 1883. On the 22d of March, 1883, at the time this action was commenced, there was due from the corporation to the plaintiff the sum of $4,406.32. The only payment that has been made on account of it, as applicable to the reduction of it, was made since this action was commenced. The plaintiff, on his examination on the 11th of March, 1884, in answer to questions put by defendants’ counsel, testified that since the corm mencement of these proceedings he has received $613.45 on account of the loan— $677.25.
The plaintiff’s counsel objected to the reception of this evidence on the ground that it is “ immaterial, irrelevant and not included in the pleadings.” There is no plea of partial pay<ment, and, for aught that appears, the fact did not exist so that it could be pleaded when the answers were put in. It is a fact which, as I think, the court would permit to be set up by supplemental answer; it is just, as I think, that it would be allowed. The plaintiff, as I think, should not, as a matter of right, recover a greater sum against the trustees than is owing by the corporation at the time of the recovery, though the indebtedness may have been larger at the time the action was commenced.
The plaintiff having said, alter this evidence had been objected to, this, viz.: “ I do not suppose that my counsel wish me to retain in my hands any money that belongs to this estate; I should have to give it to the representatives of that concern as soon as I got it.”
I regard this as expressly the wish of -the plaintiff that the *180 referee should credit on this account whatever he thinks is a just credit, irrespective of the condition of the pleadings.
It is not clear on the whole testimony of the plaintiff that more than this sum should be allowed, as of the 11th of March, 1884, he had a debit and credit account with the corporation since the receipt of that item, and as the result of it is not stated, I allow the $613.45 as a credit; this will leave due at the date of this report, from the corporation to the plaintiff, the sum of $4,057.94, which sum the plaintiff is entitled to recover.
On appeal to the general term from this judgment entéred on the report of the referee:
William B. Peck, John E. Wa/rd and William Wheeler for the defendants and appellants, made and argued the following points:
First.—The statute makes all the trustees jointly and severally liable at common law. The plaintiff must sue each separately, or all together (Deridder agt. Schermerhorn, 10 Barb., 638; Dean agt. Whiton, 16 Hun, 203). The Code has not changed this rule except as to parties liable upon the same written instrument (Code, 448, 454; Strong agt. Wheaton, 38 Wheaton, 623). Strong agt. Sproul, holding to the contrary, was revei’sed (53 N. Y., 497). Quigley agt. Walter (2 Sweeny, 175), distinctly disavows the ground .taken by the respondent.
Second.—The defendant Pond was not a stockholder nor legally elected as a trustee. Only de jure trustees are liable (King agt. The Corporation, &c., 6 East, 368; Craw agt. Easterly, 4 Lansing, 513).
Third.—The president had no authority to borrow the money or make the contract. The by-laws provided to the contrary. There was no proof that the money was necessary for the legitimate business of the company; the only evidence being that it was used in the business of the company. This is insufficient.
*181 James B. Dill (Dill & Chandler), for the respondents, made and argued the following points:
First.—Section 456 of the Code applies only to actions on contract, and actions of this nature are not included in its provisions. The action is ex delicto ( Vernon agt. Palmer, 43 N. Y. Superior Ct., 256, and cases cited). The principle claimed by the appellant that in common law, where parties are jointly and severally liable, the plaintiff must sue one or sue all, is limited to actions ex contractu (1 Chitty on Pleadings, 97, 98; Graham’s Pr., [2d ed.], p. 91). As to actions ex delicto, a different rule prevails; one, all, or any number may be made defendants (Graham’s Pr., [2d ed.], p. 93). This distinction has been observed with respect to actions against trustees (Strong agt. Sproul, 4 Daly, 326; Qnigley agt. Walter, 32 N. Y. Superior Ct., 175).
Second.—Pond assumed to act as a trustee in instituting a special proceeding in the supreme court to dissolve the corporation on the ground that he is a trustee. Whether he was legally elected a trustee, or was ever a stockholder, is immaterial ; having assumed the position of a trustee de facto he is responsible as if a trustee de jure during the time in which he assumed to act (Easterly agt. Barber, 64 N. Y., 262).
Third.—It was immaterial whether he was legally elected, or whether he was a stockholder de facto.
Fourth —The fact that the corporation received the benefit of the contract, and in the case of Halstead agt. Dodge the money loaned the corporation was used in its business, would make the contract binding on the corporation (Mead agt. Keeler, 24 Barb., 24). Hence the defendants are estopped as trustees from raising the defense ( Whitney Arms Co. agt. Barlow, 63 N. Y., 62).
The general term affirmed the judgment adopting the opinion of the referee below.